In re Horvath

[Cite as In re Horvath (1975), 42 Ohio St. 2d 60.]

(No. 74-816—Decided April 9, 1975.)

*Mr. William L. Blake,* for appellant, Anna Horvath.

*Mr. William J. Brown,* attorney general, and *Mr. Frederick L. Ransier,* for appellee, Paul W. Watkins, Superintendent, Lima State Hospital.

*Per Curiam.* Petitioner makes two arguments before this court. She maintains, first, that the Common Pleas Court lacked jurisdiction to commit her to Lima State Hospital before her indictment by a grand jury. In *Burton* v. *Reshetylo* (1974), 38 Ohio St. 2d 35, a case in which there was no information or indictment against petitioner, either before or after his commitment to Lima State Hospital, petitioner attacked his pre-indictment commitment. This court held that "a Court of Common Pleas has jurisdiction over an accused pursuant to R. C. 2945.37 and 2945.-38 when a magistrate's transcript has been filed against the accused." In the case now before this court, the Common Pleas Court had jurisdiction to commit petitioner to

Lima State Hospital before indictment, after an affidavit had been filed against her.

The principal contention of petitioner is that her commitment to Lima State Hospital by reason of her inability to stand trial offends her right to due process because, she claims, it is unlikely she will be able to be tried in the foreseeable future.

Petitioner relies on *Jackson* v. *Indiana* (1972), 406 U. S. 715. Jackson was charged with robbery. A pretrial competency hearing was held, and the court found that Jackson lacked "comprehension sufficient to make his defense" and committed him to the state Department of Mental Health until such time as "the defendant is sane." Jackson filed a motion for new trial, arguing that there was no evidence that he would ever be competent to stand trial and that, therefore, his commitment was unconstitutional. That motion was denied, and, on appeal, the Indiana Supreme Court affirmed. The United States Supreme Court reversed, holding that Jackson's incompetency commitment violated his due process and equal protection rights.

Medical and other evidence[1] before the trial court in *Jackson* showed that petitioner would never be able to comprehend the charges against him or be able to participate in his defense.[2] The United States Supreme Court noted (page 726) that "there is nothing in the record that even points to any probability that Jackson's present condition can be remedied at any future time," and held (page 738) that "a person charged * * * with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a sub-

---

[1] At his competency hearing, Jackson was represented by counsel who cross-examined the testifying doctors and called witnesses.

[2] Jackson was described as a "mentally defective deaf mute with a mental level of a pre-school child" who could not "read, write, or otherwise communicate except through limited sign language." There was evidence that it was extremely unlikely that he could ever learn to read or write.

stantial probability that he will attain that capacity in the foreseeable future.'"[a]

Until the time of the crime she is accused of committing, petitioner, Horvath, had no history of mental disturbance. The only witness, a doctor on the staff of Lima State Hospital, testifying at the hearing before the Court of Appeals was asked on direct examination, on cross-examination and by the court whether it was reasonable to expect that petitioner would have the capacity to stand trial in the foreseeable future. The witness responded that petitioner "has a reasonable expectation of going into remission, becoming restored, if you will, within a reasonable future"; "there is a reasonable expectation of her recovery in the reasonable future"; and "there is. Foreseeable." Petitioner offered no evidence to the contrary. Her evidence consisted solely of a copy of the appearance and execution docket, her motions before the Common Pleas Court and the hospital records from which the witness testified.

Therefore, the judgment of the Court of Appeals, dismissing the petition and ordering that petitioner remain in the custody of respondent, is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

---

[a]The court declined to "prescribe arbitrary time limits," but said only that Jackson was confined "on a record that sufficiently establishes the lack of a substantial probability that he will ever be able to participate fully in a trial."